**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

DEQUAN WILLIAMS, on behalf of himself and
all others similarly situated,

Plaintiff,

     -against-

TSU GLOBAL SERVICES INC., d/b/a CENTER
CITY TRANSPORTATION INC. and CENTER
CITY LIMO,

Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

**Case No.: 18-cv-72 (RRM) (ST)**

**TISCIONE, United States Magistrate Judge:**

     In this putative collective action, Plaintiff Drivers sue Defendant TSU Global Services Inc. ("TSU"), arguing that Defendant failed to pay overtime wages under the Fair Labor Standards Act ("FLSA") and bringing additional claims under New York Labor Law ("NYLL"). The instant Report and Recommendation addresses three matters before the Court: Plaintiffs' Motion for Leave to File First Amended Complaint, Dkt. No. 28; Plaintiffs' Motion to Certify FLSA Collective Action, Dkt. No. 16; and Plaintiffs' Supplemental Motion to Certify FLSA Collective Action Seeking Equitable Tolling, Dkt. No. 26. For the reasons stated below, I recommend that the Court grant each of these motions, but that the language in Plaintiffs' proposed Notice of Pendency and Reminder be modified prior to distribution.

## BACKGROUND

     Defendant TSU Global Services, Inc. ("TSU") is a "corporate and personal transportation service" with principal place of business at 11-35 31st Drive, Long Island City, New York. *See* Proposed First Am. Compl. ("Am. Compl."), Dkt. No. 28-1 ¶¶ 2, 22. Plaintiff Dequan Williams

- 1 -

was employed as a Driver for TSU from approximately November 2015 to August 2017. *See* Dkt. No. 16-1 ("Williams Decl."), ¶ 3. Other Drivers previously employed by Defendant whom Plaintiffs seek to join in a collective action include Joseph Crianza, who was employed with Defendant from approximately September or October 2016 to October 2017 (Dkt. No. 16-2 ("Crianza Decl."), ¶ 3); Chandrika Mathura, who was employed with Defendant from approximately November 2016 to January 2017 (Dkt. No. 16-3 ("Mathura Decl."), ¶ 3); and Steve Rodriguez, who was employed with Defendant from approximately April 2016 to January 2017 (Dkt. No. 16-4 ("Rodriguez Decl."), ¶ 3).

Plaintiffs allege that Defendant deprived them of overtime pay by misclassifying its Drivers as exempt employees or independent contractors, and by unlawfully deducting Plaintiffs' wages by retaining tips from customers paying by credit card rather than giving these tips to the Drivers. *See* Am. Compl., ¶¶ 6-7. In a cause of action that Plaintiffs seek to add via their Amended Complaint, Plaintiffs also allege that they regularly worked weeks in which their hourly rates of compensation were less than the minimum wage, in violation of the New York Labor Law ("NYLL"). Am. Compl., ¶ 5. These employees allege that these compensation practices were applied not only to them but constituted the uniform compensation practices of TSU and thus affected "hundreds of current and former Drivers." *See* Williams Decl., ¶ 2; Crianza Decl., ¶ 2; Mathura Decl., ¶ 2; Rodriguez Decl., ¶ 2.

## DISCUSSION

### I.    Plaintiffs' Request for Leave to File First Amended Complaint

As noted, Plaintiffs seek leave to file an Amended Complaint, primarily to add a new cause of action under N.Y. Lab. Law § 650 *et seq*. on the basis of Defendant's alleged failure to pay

some Drivers minimum wage for certain weeks during their employment with Defendant. *See* Dkt.
No. 28; Dkt. No. 28-1, ¶¶ 110-114.

A court should "freely" give leave to amend a complaint "when justice so requires." Fed.
R. Civ. P. 15(a)(2). When determining whether to grant leave, the court "considers factors such as
undue delay, prejudice to the defendants, and futility of the proposed amendments." *Hughes v.
Anderson,* No. CV09-4042(ADS)(WDW), 2012 WL 3062155, at *3 (E.D.N.Y. May 31, 2012)
(citations omitted).

When a party "opposes a proposed amendment on the ground that it is futile, the court
should review the proposed claim as it would in considering a motion for dismissal[.]" *Shpak v.
Curtis,* No. 10-CV-1818(WFK)(JO),  2012 WL 511478, at *4 (E.D.N.Y. Feb. 14, 2012) (citations
omitted); s*ee also Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.,* 283 F.R.D. 142, 149
(S.D.N.Y. 2012) (citing *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).
The court must therefore "accept all of Plaintiffs' factual allegations in the complaint as true and
draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v.
Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir. 1999), *cert. denied,* 531 U.S. 1069,
121 S.Ct. 756, 148 L.Ed.2d 659 (2001). "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d
868 (2009). The "court need not finally determine the merits of a proposed claim or defense, but
merely satisfy itself that it is colorable and not frivolous." *Sumitomo Elec. Research Triangle, Inc.
v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y. 1986).

Defendant opposes Plaintiffs' motion on the grounds that their Proposed Amended Complaint constitutes a futile amendment, prejudices Defendant, and causes undue delay to these proceedings. Def.'s Opp'n to Mot. for Leave to File First Am. Compl., Dkt. No. 29.[1]

Defendant contends that the additional minimum wage claim is futile because it is "counter-factual" and "predicated on false statements and misunderstandings by the plaintiffs." Dkt. No. 29 at 1. Principally, Defendant suggests that the addition of the minimum wage claim would be futile because Plaintiffs and others in the putative collective are properly classified as independent contractors, rather than employees, and are thus not subject to NYLL's minimum wage requirements.

Defendant's argument ignores the basic legal dictate that, when considering whether an amendment would be futile, the Court must "accept all of Plaintiffs' factual allegations in the [amended] complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio,* 191 F.3d at 202. Plaintiffs may not ultimately be able to prove that they and other putative class members are "employees" protected by N.Y. Lab. Law § 650 *et seq.*, but proof is not required at this stage. Plaintiffs have presented several facts that colorably support a finding that TSU's Drivers are employees rather than independent contractors, including that TSU required Drivers to use TSU's vehicles to perform their job duties; did not require Drivers to hold insurance of any type; were not permitted to negotiate with customers for the prices of their services or with TSU over the value of each job; did not retain tips given by customers at the conclusion of rides; and were not permitted to subcontract jobs to other drivers. *See* Williams

---

[1] Defendant also suggests that Plaintiffs misled the Court in their Consent Motion for Extension of Time to Amend Complaint, Dkt. No. 27, which the Court granted by Order dated July 29, 2018. Defendant says Plaintiffs sought extra time to amend their complaint "to add parties, not claims." Dkt. No. 29 at 2.  On the contrary, Plaintiffs' Consent Motion clearly states, "Plaintiffs will be seeking to amend the complaint to add a new cause of action and make some cosmetic changes." Dkt. No. 27.

Decl., ¶¶ 5-7, 26-31; Crianza Decl., ¶¶ 5-7, 26-31; Mathura Decl., ¶¶ 5-7, 26-31; Rodriguez Decl., ¶¶ 5-7, 26-31. Plaintiffs also allege that "TSU neither paid Williams for the time spent picking up and dropping off TSU's vehicles nor the time spent waiting in between jobs. As a result, Williams regularly worked weeks in which his actual hourly wage rate (the total wages TSU paid him divided by the total number of compensable hours) was less than the minimum wage." Am. Compl., ¶¶ 70-71. These allegations, accepted as true and with the most favorable inferences drawn in favor of Plaintiffs, satisfy the requirement of facial plausibility for newly pleaded claims. Thus, allowing this amendment would not be futile.

Nor would allowing Plaintiffs' amendment prejudice Defendant. The issues underlying Plaintiffs' sole additional minimum wage claim revolve around the same nexus of fact as Plaintiffs' other claims, namely on Plaintiffs' contention that Defendant misclassified Plaintiffs and other Drivers as independent contractors rather than employees. Defendant itself continuously references this factual dispute as dispositive of all of Plaintiffs' claims. *See* Dkt. No. 29 (repeatedly suggesting that the Court will be able to "dispose of" this case because TSU's Drivers are properly classified as independent contractors). This additional claim does no prejudice to Defendant when the underlying question of fact is the same as in Plaintiffs' other claims. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 102 (S.D.N.Y. 2010) ("Addition of the new claims will not prejudice defendants because the proposed claims are 'related closely to the original claim[s]'") (quoting *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).

Finally, Plaintiffs have in no way significantly delayed these proceedings by seeking the leave for this amendment. Plaintiffs seek leave at the early stages of this case, before conditional certification of the proposed FLSA collective. Plaintiffs filed their request for leave to file the amendment within the time limit set by the Court. *See* Order Granting Pls.' Consent Mot. for

Extension of Time to Amend Compl., Dkt. No. 27. There is no support for Defendant's contention that Plaintiffs' amendment will unduly delay this case under applicable law. *See, e.g.*, *Contrera v. Langer*, 314 F. Supp. 3d 562, 575 (S.D.N.Y. 2018) (finding no undue delay caused by first amended complaint that was filed nearly two years after the original complaint).

Given the liberal standards for granting leave to file amended complaints, Plaintiffs' diligence in amending, and the limited nature of the single cause of action Plaintiffs seek to add, I recommend that Plaintiffs' leave to file the First Amended Complaint be granted.

## II.    Plaintiffs' Motion for Collective Certification under the Fair Labor Standards Act

*1.  The Legal Standard for Granting Conditional Certification*

Plaintiffs seek conditional certification as a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA, which provides in pertinent part that:

> An action ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, employees "similarly situated" to the plaintiffs may opt in to a collective action brought under the FLSA, and therefore become plaintiffs themselves, by filing a written consent form with the court. *See, e.g.*, *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG),  2016 WL 4718413, at *5 (S.D.N.Y. Sept. 9, 2016).

The conditional certification of a FLSA collective action is a discretionary exercise of the Court's authority; it is useful as a case management tool, facilitating the dissemination of notice to potential class members. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989)). Because it is discretionary, a motion for conditional certification involves a "far more lenient" standard than a motion for class

certification under Rule 23 of the Federal Rules of Civil Procedure. *Feng v. Soy Sauce LLC*, No. 15 CV 3058 (ENV)(LB), 2016 WL 1070813, at *2 (E.D.N.Y. Mar. 14, 2016).

Courts within the Second Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action. *Myers*, 624 F.3d at 554-55. In the first step, the Court will analyze the pleadings, affidavits, and declarations to determine whether the plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery. *Id.* at 555.

The first step requires only a "modest factual showing" that plaintiffs and potential opt-in members "together were victims of a common policy or plan that violated the law." *Id.* (internal quotation marks and citations omitted). The standard of proof is low "because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (emphasis in original). Participants in a potential collective action need not have held identical jobs or been subject to identical treatment; rather, conditional certification is appropriate where all putative class members are employees of the same enterprise and they allege the same types of FLSA violations. *Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011).

Nonetheless, this "modest factual showing cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555 (internal quotation marks and citation omitted); *see also Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111-12 (S.D.N.Y. 2015) (at the first step, the court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations . . . [T]he evidence must be sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law.") (internal quotation marks and citations omitted); *Valerio v. RNC Indus.*, *LLC*, 314 F.R.D. 61, 66 ("[a]lthough the burden on the plaintiff at this preliminary stage is modest, it is

not nonexistent") (internal quotations marks and citations omitted). Still, for conditional certification purposes, "the Court [should] draw all inferences in favor of the Plaintiff[s]." *See Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012).

If a court finds that there are potential opt-in plaintiffs who are "similarly situated," then it has "broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360(RRM)(LB), 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation marks and citations omitted). However, "[t]o bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23" of the Federal Rules of Civil Procedure. *Feng*, 2016 WL 1070813, at *4 (citation omitted).

At the second stage, the Court will, on a fuller record, determine whether the actual opt-in plaintiffs are in fact "similarly situated" to the named plaintiffs. *Myers*, 624 F.3d at 555. If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective action and the opt-in plaintiffs' claims could be dismissed without prejudice. *Id.*

2. *Conditional Certification*

Plaintiffs seek to form a collective composed of all Drivers who are working or worked for TSU during the three (3) years prior to the filing of their consent forms. *See* Am. Compl., ¶ 35.[2] The sole cause of action of the proposed collective is to recover unpaid overtime. Dkt. No. 16-5.

---

[2] The proposed Notice of Pendency filed by Plaintiffs lists the date certain of January 9, 2015 (three years prior to the filing of the complaint in this action) as the beginning of the period during which Drivers may have been employed by TSU in order to join the collective. *See* Dkt. No. 16-5 ("Notice of Pendency" or "Notice"). The statute of limitations for causes of action under the FLSA is two years, or a maximum of three years if the employer willfully violated the statute. 29 U.S.C. § 255. The Plaintiffs' Amended Complaint therefore properly represents the statute of limitations for Drivers' claims where the Notice of

In opposing collective certification, Defendant does not appear to argue that, under the FLSA, TSU's alleged practices of not paying overtime to Drivers, if properly categorized as "employees," would constitute an "unlawful policy." Def.'s Opp'n to Pls.' Mot. for Collective Certification, Dkt. No. 18.

Defendant does argue, however, that the Drivers in the proposed collective are not "similarly situated," disputing the sufficiency of the evidence Plaintiffs have offered to establish that each of the proposed collective members actually worked more than 40 hours per week, and thus that any or all of them were entitled to overtime pay. Dkt. No. 18 at 2.

To ascertain whether plaintiffs are similarly situated, district courts typically examine whether "[plaintiffs] and other employees have similar positions, job requirements, pay provisions, and the like; there must be an identifiable factual nexus which binds [plaintiffs] and potential class members together as victims of a particular practice." *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). As discussed above, the instant motion concerns only the first step in the process of certification as a FLSA action. At this stage, Plaintiffs' burden is "minimal," and they need only make a "modest factual showing sufficient to demonstrate that [they] and potential [opt-in] plaintiffs together were victims of a common policy or plan that violated the law." *Feng*, 2016 WL 1070813, at *2 (internal quotation marks and citations omitted).

Plaintiffs have met the minimal standard for demonstrating that members of the proposed collective are similarly situated. Plaintiff alleges that Defendant is a single corporate entity operating at a single location. Am. Compl., ¶¶ 20-22. The proposed collective members were or are all employed by Defendant as Drivers. Am. Compl., ¶ 35. The former TSU Drivers who have

Pendency does not. I recommend, however, that the three-year maximum statute of limitations be modified to include a period of equitable tolling in this case. *See* Section III, *infra*.

submitted declarations in this action describe job responsibilities, working conditions, and compensation that are similar to each other's and to TSU's other drivers. Williams Decl., ¶¶ 4-36; Crianza Decl., ¶¶ 4-36; Mathura Decl., ¶¶ 4-36; Rodriguez Decl., ¶¶ 4-36.

Despite these shared facts, Defendant argues that these declarants' contentions that TSU Drivers *other than them* worked more than 40 hours per week are "pure speculation," because one Driver would not have direct knowledge of the trips being carried out by another Driver while he himself was completing an assignment. Dkt. No. 18 at 2. Defendant objects that the declarants only base their claims to know the hours worked by fellow Drivers on their observation of the times at which they picked up and dropped off their vehicles from TSU. Dkt. No. 18 at 2. Defendant argues that this is not a valid metric for measuring the number of hours worked by these employees, because TSU's Drivers may accept or decline assignments offered by TSU and may spend much of their day waiting for their next assignments. Dkt. No. 18 at 2; Dkt. No. 18-1 ("Inkawa Decl."), ¶¶ 26-32. Defendant thus argues that the statements of the employee-declarants do not provide enough support even "to satisfy [Plaintiffs'] 'modest' burden." Dkt. No. 18 at 2.

In fact, Plaintiffs have offered more evidence to demonstrate that the proposed collective members are similarly situated than the Defendant acknowledges. Most obviously, Plaintiffs are not only relying on statements of the declarants about the hours worked by other Drivers, but on the statements of the hours worked by the declarants themselves, all of whom worked as Drivers in the applicable period and are thus members of Plaintiffs' proposed collective. Each of these Drivers avers that he worked more than 40 hours per week for TSU. *See* Williams Decl., ¶¶ 17-18; Crianza Decl., ¶¶ 17-18; Mathura Decl., ¶¶ 17-18; Rodriguez Decl., ¶¶ 17-18. Plaintiffs may satisfy their burden of establishing a similarly situated collective of employees by relying on "their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class

members." *Hallissey v. Am. Online, Inc.,* No. 99-CIV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). "Indeed, the burden is so low that even one or two affidavits establishing the common plan may suffice." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013) (internal citations omitted).

As to each of the employees' knowledge of the other Drivers' work schedules, while Defendant may prove correct that vehicle pick-up and drop-off times are inaccurate metrics for determining the Drivers' work hours, these observations by declarants provide a colorable basis for believing that they and other Drivers were similarly situated with respect to the number of hours they worked, which is all that is required for conditional certification. Moreover, the declarants do not only profess to know the other Drivers' schedules based on vehicle pick-up and drop-off times, but also on conversations that each of them had with other Drivers regarding their work schedules, in which the Drivers reported that they "were working long hours without overtime pay or other benefits." *See* Williams Decl., ¶ 37; Crianza Decl., ¶ 37; Mathura Decl., ¶ 37; Rodriguez Decl., ¶ 37. Defendant also incorrectly states that the declarants do not affirmatively identify other drivers whose allegedly prolonged working hours they observed. Each of the declarants identifies by name multiple other Drivers who they attest worked more than 40 hours per week, including both the other declarants and additional TSU employees. *See, e.g.*, Mathura Decl., ¶ 35 (identifying "Clay Clemente, Huang 'Jerry' Xian, Boris (last name unknown), Diego (last name unknown), Galaal (spelling and full name unknown), Henry (last name unknown), Juan (last name unknown), and Val (full name unknown).")

As such, Defendant's arguments are not appropriate to this first stage of collective certification in this FLSA action.[3] In the second stage, the Court will have occasion to consider

---

[3] Defendant also argues that "denial of Plaintiffs' request for collective action and notice" is warranted because "there is a dearth of factual support for th[e declarants'] contention" that other putative collective

whether the Plaintiffs who do ultimately opt in are in fact "similarly situated" and decertify the collective action if they are not. *Myers*, 624 F.3d at 555. Plaintiffs have sufficiently alleged that Drivers are similarly situated to meet the standards for a grant of conditional certification. I therefore recommend the conditional certification of Plaintiffs' proposed collective of all Drivers who are working or worked for TSU during the relevant time period.[4]

### B.    Notice of Pendency, Consent to Join, and Reminder

Plaintiffs also seek approval of the proposed Notice of Pendency ("Notice of Pendency" or "Notice") and Consent to Join form ("Consent" or "Consent to Join" form), Dkt. No. 16-5, and Reminder Notice ("Reminder"), Dkt. No. 16-8. For the reasons noted below, the Court recommends the distribution of these documents subject to modifications of certain provisions.

Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take or what provisions the notice should contain. *See Moore v. Eagle Sanitation, Inc.,* 276 F.R.D. 54, 58 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). It is well settled, however, that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court." *Sobczak*, 540 F. Supp. 2d 354, 364; *see also Hernandez*, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the

---

members fear retaliation by TSU. Dkt. No. 18 at 2. Defendant's argument is misdirected. The Plaintiffs do not have to demonstrate that other putative collective members are fearful of retaliation in order to be granted conditional certification, only that "[current] and potential plaintiffs together were victims of a common policy or plan that violated the law," *Bittencourt*, 310 F.R.D. at 111-112, and that they are similarly situated in the basic elements of their employment relationships.

[4] The calculation of the period during which Drivers can have worked for TSU (three years, plus the equitable tolling period, plus ten days) is provided in Section III, *infra*.

pendency of the collective action, so that they can make informed decisions about whether to participate.") (internal quotation marks omitted)).

Defendant makes four (4) objections to Plaintiffs' proposed Notice, Consent, and Reminder. The Court agrees with the substance of all of Defendant's objections and recommends that the Court order revisions accordingly.

First, Defendant objects that the "Notice expressly references Plaintiffs [*sic*] other alleged claims under New York's [*sic*] Labor Law," which Defendant argues "has a significant potential of causing confusion" to potential opt-ins who receive the Notice. Dkt. No. 18 at 3. As a result, Defendant requests that any references to Plaintiffs' claims under the NYLL be stricken from the Notice. Dkt. No. 18 at 3. The relevant portions of Defendant's Notice are excerpted below:

> A group of current and former Drivers ("Plaintiffs") sued TSU Global Services Inc. d/b/a Center City Transportation Inc. and Center City Limo ("TSU"), claiming that they and other Drivers are owed overtime under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for hours they worked over 40 in a workweek.

> The lawsuit is proceeding as a collective action on behalf of all Drivers who worked for TSU at any time between January 9, 2015 and the present who were not paid time and one-half their regular rate for all hours worked over 40 in a given workweek….

> The lawsuit alleges that TSU misclassified Drivers as independent contractors and, as a result, failed to pay Drivers overtime compensation for all hours over 40 worked per week in violation of the FLSA. Plaintiffs further allege that Drivers earned gratuities from customers but TSU failed to remit those gratuities to the Drivers, in violation of the NYLL. Lastly, Plaintiffs allege that TSU violated the NYLL by failing to provide Drivers with the requisite wage notices at the time of hiring and wage statements (i.e., paystubs).

Docket No. 16-5 at 1-2.

The Court first notes that a plaintiff is not categorically prohibited from referencing state law claims, over which the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1637(a), brought together with claims under the FLSA in the Notice of Pendency. This court has

noted the propriety of making references to state law claims that may be available to potential collective members even if their claims under the FLSA are time-barred or otherwise unavailable. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 461–62 (E.D.N.Y. 2014) (collecting cases); *but see Hanchard-James v. Brookdale Family Care Centers*, No. 12 Civ.1922(BMC),2012 WL 3288810, at *6 (E.D.N.Y. Aug. 9, 2012) (granting Defendant's request to strike all references to state law claims).

However, as Defendant suggests, the specific wording of the proposed Notice drafted by Plaintiffs improperly conflates the FLSA and NYLL causes of action. The Notice refers to the Plaintiffs as having sued Defendant under both the FLSA and the NYLL, and then claims that "*[t]he lawsuit* is proceeding as a collective action." Dkt. No. 16-5 at 1 (emphasis added).  It also refers to the lawsuit as a "collective action lawsuit." Dkt. No. 16-5 at 1.

The imprecise nature of these statements is not inconsequential. The Notice as written may lead opt-in collective members to believe, incorrectly, that their claims under the NYLL may be vindicated by means of the same collective action provided for by the FLSA, including believing that the other terms in the Notice (for example, the binding nature of their agreement to proceed as a collective action, Dkt. No. 16-5 at 3, the contingency fee arrangement, Dkt. No. 16-5 at 6) also apply to their NYLL claims. Plaintiffs may not attempt to induce more TSU employees to opt in by implying that the collective can vindicate potential NYLL claims, which Plaintiffs' counsel are no doubt aware is inaccurate.[5]

---

[5] Conditional certification of this FLSA collective action "in no way alleviates Plaintiffs' obligation to separately certify a class based on state law claims if they choose to pursue those claims collectively." *Moore,* 276 F.R.D. at 61 (E.D.N.Y. 2011).

In light of these concerns, I recommend that the disputed language in the Notice be modified to read as follows: [6] [7]

> A group of current and former Drivers ("Plaintiffs") sued TSU Global Services Inc. d/b/a Center City Transportation Inc. and Center City Limo ("TSU"), claiming that they and other Drivers are owed overtime under the Fair Labor Standards Act ("FLSA") ~~and New York Labor Law ("NYLL")~~ for hours they worked over 40 in a workweek.

> The **FLSA claim in this** lawsuit is proceeding as a collective action on behalf of all Drivers who worked for TSU at any time between ~~January 9, 2015~~ **[three years prior to the date of the Order plus the equitable tolling period]** and the present who were not paid time and one-half their regular rate for all hours worked over 40 in a given workweek....

> The lawsuit alleges that TSU misclassified Drivers as independent contractors and, as a result, failed to pay Drivers overtime compensation for all hours over 40 worked per week in violation of the FLSA. **Aside from their collective action claims**, Plaintiffs further allege that Drivers earned gratuities from customers but TSU failed to remit those gratuities to the Drivers, in violation of the New York Labor Law ("NYLL"). ~~Lastly~~ Plaintiffs **also** allege that TSU violated the NYLL by failing to provide Drivers with the requisite wage notices at the time of hiring and wage statements (i.e., paystubs) **and by failing to pay Drivers minimum wage on certain weeks in which they worked more than 40 hours.**

Next, the Defendant objects that the Notice and the Reminder both direct potential opt-ins to mail their Consent to Join forms to the address of the Plaintiffs' attorney, rather than the Clerk of Court. *See* Dkt. No. 16-5 at 5; Dkt. No 16-8. Courts within this Circuit have split on whether the consent forms should be returned to the Clerk of the Court or to Plaintiffs' attorney. *Compare, e.g., Velasquez v. Digital Page, Inc.*, No. CV 11–3892(LDW)(AKT), 2014 WL 2048425, at *14 (E.D.N.Y. May 19, 2014) ("The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel.") *with Mata–*

---

[6] Aside from this issue regarding the nature of the action, I am now recommending that the Court grant Plaintiffs' motion to add a minimum wage claim to its First Amended Complaint. The revised version of Plaintiffs' Notice below appropriately references this additional cause of action.

[7] All references to the date of January 9, 2015 in the Notice and Plaintiffs' other proposed notification documents should be replaced with the relevant date as calculated from the date of the Court's Order, including the period of equitable tolling.

*Primitivo v. May Tong Trading Inc.,* No. CV 2013–2839(CBA)(MDG), 2014 WL 2002884, at *6 (E.D.N.Y. May 15, 2014) ("requiring such forms to the Clerk of Court might prove intimidating to potential opt-in plaintiffs and may prevent individuals from joining the action."). In this case, I recommend that the Court follow the most common practice within the Circuit, which is to direct the potential opt-in collective members to return their Consent to Join forms to the Clerk of Court for the Eastern District of New York in Brooklyn, New York. The address of Plaintiffs' attorney in Section 9 of the Notice, Dkt. No. 16-5 at 5, and the contact information of the Plaintiffs' attorney of the Reminder, Dkt. No. 16-8 at 2, should therefore be replaced with the address of the Clerk of Court.

Next, Defendant objects to the form of the Notice's advisory to potential opt-in collective members that they may retain their own attorneys, and requests that the Court strike a sentence that reads, "You do not need to hire your own lawyers because Plaintiffs' Counsel will be working on your behalf." Dkt. No. 18 at 3.

I agree with Defendant that this sentence inappropriately steers potential collective members away from exercising their absolute right to retain separate counsel. Yet, in my view, this sentence is not the most concerning "right to retain" language within the proposed Notice. Rather, that is the following:

10. If I join this case, do I *have a lawyer*?

If you choose to join this lawsuit you *will be represented* by Plaintiffs' Counsel:

[Contact information for Plaintiffs' attorneys.]

Dkt. No. 16-5 at 5 (emphasis added). This absolute language ("have a lawyer" and "will be represented by Plaintiffs' Counsel") is particularly likely to misdirect potential class members from a sincere inquiry into whether they wish to be represented by the Plaintiffs' attorney or by

outside counsel, which is each member's absolute right. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1210.1. To uphold the integrity of the FLSA's collective action process, which requires that legally uninitiated current and former employees be informed of their rights and interests as accurately as possible, the matter of the collective members' choice of counsel must be presented neutrally in the Notice of Pendency. *See Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 463 (E.D.N.Y. 2012) (revising language in Notice of Pendency where proposed Notice did not adequately inform potential collective members of their right to choice of counsel); *Cherif v. Sameday Delivery Corp.*, No. No. 13–CV–1341 (RJD)(MDG), 2015 WL 5772012, at *6 (E.D.N.Y. Sept. 30, 2015) (same). I therefore recommend that the Court order the following revisions to this language:

10. ~~If I join this case, do I have a lawyer?~~ **Who is my lawyer?**

If you choose to join this lawsuit, you **may** be **represented by a lawyer of your choosing, including** Plaintiffs' Counsel:

[Plaintiffs counsel's contact information]

More information about [law firm of Plaintiffs' counsel] is available at [firm website].

**If you retain your own counsel, you will be responsible for making arrangements for payment of the fees of the attorney you select. The counsel you hire must file with the Court a Consent to Become a Party Plaintiff in this lawsuit by [10 days from date of Order] and must enter a formal appearance as attorney on your behalf.**

11. ~~Should I get my own lawyer?~~

~~You do not need to hire your own lawyer because Plaintiffs' Counsel will be working on your behalf. However, if you do not want to be represented by Shulman Kessler LLP, in connection with this lawsuit, you may choose to retain your own counsel (at your own expense).~~

Next, Defendant raises an objection to a "solicitation contained in the Notice" and repeated in the Reminder advising potential opt-ins to contact Plaintiffs' attorney with any questions. Dkt.

- 17 -

No. 18 at 4. The referenced language is contained under the heading "13. Questions?" in the Notice, Dkt. No. 16-5 at 6, and in the Reminder, Dkt. No. 16-8. While I hesitate to denote this language a "solicitation," I agree with Defendant in substance that this language is unnecessary in both the Notice and the Reminder. The Notice as revised above prominently includes the Plaintiffs' attorney's contact information, and it clearly sets forth the rights and interests at stake for potential members of the collective action and the necessary steps to be taken to vindicate those rights. These documents are wholly adequate to advise interested members of the collective action. I therefore recommend the removal of (i) section 13 of the Notice in its entirety, (ii) the sentence in the Reminder beginning, "If you have any questions…."

Finally, Defendant seems to request that the Court strike the Plaintiffs' reminder notice in its entirety, referring to the Reminder as an attempt to "take two bites at the apple." Dkt. No. 18 at 4. I do not believe that the Plaintiffs' Reminder notice is inherently objectionable and will not recommend it be wholly stricken. Reminder notices are frequent components of FLSA collective action notices, which this Circuit typically allows to be distributed. *See, e.g.*, *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012); *Sharma*, 52 F. Supp. 3d at 466; *Flood v. Carlson Rests. Inc.,* No. 14 Civ. 2740(AT), 2015 WL 6736118, at *2 (S.D.N.Y. Nov. 3, 2015); *but see Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012). With the incorporation of the revisions noted above, I find that the Reminder will be appropriate.

Plaintiff has also submitted to the Court a proposed e-mail containing the Notice, Dkt. No. 16-6, and a proposed text message containing the Notice, Dkt. No. 16-7. Defendant notes no objections to these messages, which merely circulate the Notice. I recommend the Court issue an Order approving of these messages as written.

Plaintiff has also moved the Court to direct TSU to furnish all of the names and contact information of Drivers employed by it since January 9, 2015, and to post the Notice of Pendency and Consent to Join form at its workplace. Dkt. No. 16 at 1. In FLSA collective actions, it is routine practice for the Court to direct the defendant to provide "names, mailing addresses, email addresses, and telephone numbers" of members of the collective, *Wang v. Empire State Auto Corp.*, No. 14–cv–1491 (WFK)(VMS),  2015 WL 4603117, at *15 (E.D.N.Y. June 29, 2015), and to direct the employer to post the Notice of Pendency and Consent form conspicuously in an employee common area, *Wang*, 2015 WL 4603117, at *17. The Defendant voices no opposition to these requests, *see* Dkt. No. 18.

The date from which Defendants must provide the contact information of employees does not begin at January 9, 2015, but three (3) years prior to the issuance of the Court's Order, plus the equitable tolling period, plus ten (10) days. *See* Section III, *infra*. Other than this correction, I see no reason to depart from the Court's standard practice of directing Defendant to provide employee contact information (names, mailing addresses, email addresses, and telephone numbers), and to post the Notice and Consent at its premises. I recommend that the Court so order.

## III.     Plaintiffs' Request for Equitable Tolling

Finally, Plaintiffs request that the Court equitably toll the statute of limitations for potential opt-in members from March 30, 2018 (the date Plaintiffs filed their Motion to Certify a FLSA Collective Action) to ten (10) days beyond the issuance of the Court's Order certifying the collective. *See* Dkt. No. 26. Normally, in a FLSA collective action, the statute of limitations for each plaintiff runs when he or she files written consent with the court electing to join the lawsuit. *See* 29 U.S.C. § 256(b). However, courts have discretion to equitably toll the limitations period in appropriate cases in order "to avoid inequitable circumstances." *Yahraes v. Restaurant Assocs.*

*Events Corp.*, No. 10–CV–935 (SLT), 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011). "The delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Id.* at *2 (collecting cases). While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings.

Defendant briefly notes its opposition to Plaintiffs' request for equitable tolling in its Response in Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint, Dkt. No. 29 at 2. However, Defendant cites no cases or other authority supporting this request, providing no rationale to deviate from the standard practice of equitably tolling Plaintiffs' claims during the pendency of collective certification with the Court.

As to the precise date to which this action should be equitably tolled, Plaintiffs request ten (10) days from the date of entry of the Court's Order granting conditional certification to account for the time necessary to mail the Notices of Pendency to potential opt-in members. *See Oakley v. Servisair, LLC*, No. 13-cv-4191 (ENV) (PK), 2017 WL 3017719 (E.D.N.Y. July 14, 2017) (granting tolling through this period). Defendant does not object to the specific period of tolling or cite any authority against this period. I find Plaintiffs' proposed period reasonable and recommend that the Court equitably toll the collective members' claims from March 30, 2018 to ten (10) days beyond the issuance of the Order granting conditional certification.

Therefore, the Notice of Pendency and all other notifications distributed by Plaintiffs in connection with this case should define the collective as Drivers who have been employed by TSU

at any time since three years from the date of the Order, plus the number of days between March 30, 2018 and the date of the order, plus ten days.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court issue an Order directing that:

(1) Plaintiffs be granted leave to file the Amended Complaint contained at Dkt. No. 28-1;

(2) Plaintiffs' proposed FLSA collective be conditionally certified;

(3) Defendant furnish the names and contact information for all Drivers employed at any time within three (3) years prior to the date of the Court's Order, plus the number of days between March 30, 2018 and the date of the Order, plus ten (10) days;

(4) Plaintiffs' Notice of Pendency, Consent to Join form, and Reminder be distributed as modified in this Report and Recommendation;

(5) Defendant post the Notice of Pendency and Consent to Join form conspicuously in an employee common area; and

(6) Plaintiffs' claims under the FLSA are equitably tolled from March 30, 2018 through 10 days after the Court Orders conditional certification of Plaintiffs' FLSA collective.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Pursuant to Fed. R. Civ. P. 72(b)(2), the Parties shall then have fourteen (14) days from service of any objections to respond. Failure to file timely

objections shall constitute a waiver of those objections both in the District Court and on later appeal

to the United States Court of Appeals.[8]

**SO ORDERED.**

 /s/ Steven L. Tiscione
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated:  Brooklyn, New York
            November 20, 2018

---

[8] *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).