**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

DEQUAN WILLIAMS, on behalf of himself and all
others similarly situated,

                              Plaintiffs,                **MEMORANDUM AND ORDER**

     -against-

                                                     18-CV-0072 (ST)

TSU GLOBAL SERVICES INC. D/B/A CENTER CITY
TRANSPORTATION INC. AND CENTER CITY
LIMO,

                              Defendant.
-------------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Plaintiff Dequan Williams ("Williams"), on behalf of himself and others similarly

situated ("Prospective Plaintiffs"), commenced this action against Defendants TSU Global

Services Inc. D/B/A Center City Transportation Inc. ("TSU") and Center City Limo ("CC")

(collectively, "Defendants") alleging violations under the Fair Labor Standards Act ("FLSA")

and New York Labor Law ("NYLL").  Before this Court is Defendants' Motion for Summary

Judgment.

For the following reasons, this Court grants, in part, and denies, in part, Defendants'

Motion for Summary Judgment.

**I.**        **BACKGROUND**

Plaintiff Williams is an individual residing in Bronx County, New York.  FAC ¶ 14.

Defendant TSU is a New York based corporation involved in transportation services to and from

the airports and has its principal place of business in Long Island City, New York.   FAC ¶ 22;

Def.'s Rule 56.1 St. ¶ 1.

Defendant CC is a New Jersey based corporation, which was closed in 2019.  Defs.' Mot., Mem of Law at 3-4.

Plaintiff seeks to recover unpaid overtime and misappropriated tips for Prospective Plaintiffs and himself, who were all co-workers and worked as "Drivers" for Defendants.  FAC ¶ 1.  The Drivers allegedly transported TSU's customers in buses, vans, and other vehicles.  FAC ¶ 3.  While Defendants allege that all workers were required to have a specialized Commercial Driver Licenses, Willams avers that he was never required to have any special license.  Williams Aff. ¶ 4; Def.'s Rule 56.1 St. ¶ 1.

Williams brings this action on behalf of himself and all similarly situated persons who work or have worked for Defendant as a Driver within the last three years and who elect to opt-in to this action.  FAC ¶ 31.  In his Amended Complaint, Williams alleges common factual allegations on behalf of himself and the Prospective Plaintiff that they worked over 40 hours per week without receiving premium overtime pay for all the hours worked; that their hourly rate was less than the minimum wage; that TSU misclassified its Drivers as exempt employees and independent contractors; that TSU also unlawfully deducted from Plaintiff's wages and failed to remit the full value of Plaintiff's tips; and that TSU failed to provide accurate employment records and hiring notices.  *Id*. ¶¶ 4-7, 49-61.

## II.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.*  In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."  *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).

A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

## III.   DISCUSSION

### A.  Statute of Limitations

Defendants argue that statute of limitation for FLSA violations is two years, and that claims arising prior to January 2016 must be time-barred.  Plaintiff argues for a three-year statute of limitations.

The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a willful violation.  *Gurrieri v. County of Nassau*, 16-CV-6983 (ADS) (SIL), 2019 WL 2233830 at 8 (E.D.N.Y. May 23, 2019); *Yu G. Kev. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To show

willfulness, the employer must have "either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).  An employer will be deemed to have recklessly disregarded the statute if it "should have inquired further into whether its conduct was in compliance with the [FLSA], and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3). Plaintiffs need not show that Defendant had actual knowledge of its FLSA violations or that they "acted with intent to discriminate or in bad faith."  *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) (citation omitted).

Here, Plaintiff filed his initial Complaint on January 5, 2018.  DE 1.  Accordingly, the claims of Prospective Plaintiff Simkho Abayev, who has not worked for CC since 2013, and Prospective Plaintiff Oskoev Taalaibek, who has not worked for CC since 2014, are time-barred as a matter of law.  As to Plaintiff and remaining Prospective Plaintiffs, "[b]ecause of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact." *Ramirez v. Rifkin*, 568 F.Supp.2d 262, 268 (E.D.N.Y.2008); *see also Hart v. Rick's Cabaret Int'l, Inc*., 967 F.Supp.2d 901, 937 (S.D.N.Y.2013) ("Although willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high."); *Inclan v. New York Hospitality Group*, Inc., 95 F.Supp.3d 490 (S.D.N.Y. 2015) ("We see no reason in this case to depart from the general reluctance of courts to resolve the question of willfulness on a motion for summary judgment.")

Thus, whether Plaintiff's Claims prior to January 6, 2016, are time-barred is a determination best made after the issue of Defendants' alleged willfulness in failing to pay overtime wages is resolved by the fact finder.

### B.  Plaintiff's First (FLSA) and Second (NYLL) Causes of Action are not Dismissed Due to Disputed Issues of Material Facts

Exemptions to the FLSA are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc*., 361 U.S. 388, 392 (1960).  The defendants have the burden of proving that they are covered by the exemption. *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 82 (2d Cir. 2015).

In order for the motor carrier exemption to apply, the employer must be subject to the jurisdiction of the Secretary of Transportation by virtue of operating as a "motor carrier," as defined by the Motor Carrier Act, and the employee must be engaged in "activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Dauphin v. Chestnut Ridge Transp., Inc*., 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008); *D'Arpa v. Runway Towing Corp*., No. 12-cv-1120, 2013 WL 3010810, at 7 n.15 (E.D.N.Y. June 18, 2013) (quoting 29 C.F.R. § 782.2); *see also* 49 U.S.C. § 13501).

At the time of Plaintiff's employment, "motor carrier" meant "all vehicles 'providing motor vehicle transportation for compensation.'" *D'Arpa*, 2013 WL 3010810, at 7 (quoting 49 U.S.C. § 13102(14)); *see also Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 264 (E.D.N.Y. 2012) ("Motor carrier" today means "a person providing motor vehicle transportation for compensation.").

The MCA exemption does not apply to individuals who are considered a "covered employee" under the Technical Corrections Act of 2008 ("TCA"), PL 110–244, June 6, 2008, 122 Stat. 1572; *Leier v. Lincoln Limousine Brokerage Inc*., No. 14 Civ. 3121, 2018 WL 276345, at 2-3 (E.D.N.Y. Jan. 3, 2018).   The TCA applies the FLSA to employees of motor carriers who, at least in part, drive vehicles (a) weighing 10,000 pounds or less and (b) "designed or used to transport more than 8 passengers," including the driver.  *Id*.; TCA § 306(c).  "[Drivers of mixed fleets clearly fall within the exception, and thus, are entitled to overtime pay under FLSA. *Frapanpina v. Garda CL Great Lakes, Inc*., No. 19 Civ. 493, 2021 WL 1088302, at *3 (N.D. Ill. Mar. 22, 2021).

The two circuits that have squarely addressed the issue have adopted the position that Plaintiff advocates; that is, because the plain text of the TCA provides that an employee need only work on small vehicles "in part" to qualify for the exception, drivers of mixed fleets clearly fall within the exception, and thus, are entitled to overtime pay under FLSA.  *Schilling v. Schmidt Baking Co*., Inc., 876 F.3d 596, 601 (4th Cir. 2017) ("The structure of the TCA exception also makes clear that an employee need only work on smaller vehicles 'in part' to qualify for overtime compensation."); *McMaster v. E. Armored Servs., Inc*., 780 F.3d 167, 169–70 (3d Cir. 2015) (holding that the TCA exception applies to an employee working on mixed fleet vehicles).

The majority of district courts have agreed with the Third and Fourth Circuits that the TCA's plain text contemplates employees who drive mixed fleet vehicles.  *See Noll v. Flowers Foods Inc*., 442 F. Supp. 3d 345, 363 (D. Me. 2020); *Butler v. TFS Oilfield Servs., LLC*, No. SA-16-CV-01150-FB, 2019 WL 177304, at *7 (W.D. Tex. Jan. 11, 2019); *Berry v. Best Transportation, Inc*., No. 4:16-CV-00473-JAR, 2018 WL 6830097, at *6 (E.D. Mo. Dec. 27,

2018); *Leier v. Lincoln Limousine Brokerage Inc.*, No. 14CV3121PKCVVP, 2018 WL 276345, at *3 (E.D.N.Y. Jan. 3, 2018); *Garcia v. JIA Logistics, Inc.*, No. 16-22870-CIV, 2017 WL 2346149, at *5 (S.D. Fla. May 30, 2017).

Here, Defendants argue for the MCA exception because they qualify as motor carriers and the vehicles are both in allegedly excess of the gross vehicle weight rating and weight, and are designed to transport more than 8 passengers (See, MCA, 49 U.S.C. § 31132; Decl. of Zoly Losch). Defendants submit sworn testimony and documentary evidence from the U.S. Department of Transportation ("DOT") website that they do not have any smaller vehicles that are outside DOT regulation.

On the contrary, Plaintiff argues against the application of the MCA exception because Plaintiffs regularly used minivans, sedans, and SUVs, which seat 8 or less and weigh less than the prescribed 10,000 pounds. In the Amended Complaint, Williams alleged that "[d]rivers transport TSU's customers in its buses, vans, and other vehicles." FAC ¶ 3. Williams and other Prospective Plaintiffs also submit affidavits and aver that "[d]epending on the job TSU assigned [to them], [they] drove smaller vehicles, such as SUVs or mini-vans, or larger passenger vehicles, such as vans or minibuses". *See* Williams Aff. Plaintiff's Rule 56.1 Statement response to Defendants' Rule 56.1 Statement further states that "[plainitffs] deny that Plaintiffs exclusively drove vans and busses for TSU and CC. That is, Plaintiffs also drove smaller vehicles, such as SUVs and mini-vans. *See* Ex. 4 (Williams Decl.) ¶ 11; Ex. 5 (Criaza Decl.) ¶ 11; Ex. 6 (Mathura Decl.) ¶ 11; Ex. 7 (Rodriguez Decl.) ¶ 11; Ex. 9 Reservations) (noting that the vehicle types including Chevrolet Suburban and Sedan Towncar)"

In reply, Defendants argue that Plaintiffs submit boilerplate sham affidavits from all Plaintiffs, which fail to demonstrate that any of the Plaintiffs actually drove those passengers in a

"sedan" or any smaller vehicle.  Defendants argue that a review of the corresponding records show that when a "sedan towncar" was requested, Prospective Plaintiff Rodriguez actually drove a "Van 14 PAX" instead.   Defendants submit Zoly Losch, Defendants' Shareholder, affidavit along with their website and the payroll/trip records to show that all vehicles were essentially large capacity.  Losch avers that "TSU and CC only own or lease large capacity vehicles such as 14-passenger "vans", 24- to 36-passenger mini-coaches and full-size busses -- all of which require drivers with a Commercial Driver's License…".  Defs.' Mot., Losch Decl. ¶ 7.

Given the contradicted material issues of fact created by Plaintiff and Prospective Plaintiffs' sworn affidavits and Defendants' affidavit and records, as to whether Plaintiff drove any cars or vans other than the ones prescribed under the MCA exemption, the evidence must be viewed in light of the non-moving party, here Plaintiff, and summary judgment is not appropriate on Plaintiff's first and second causes of action for overtime wages.

### C.  Plaintiff's Third, Fourth and Seventh Causes of Action Must Be Dismissed with Prejudice

#### 1.  Improper Deduction

Plaintiff alleges that Defendants made improper deductions from their paystub in violation of the NYLL.  12 N.Y.C.C.R.R. § 195.  Defendants produce paystubs to show that no deductions of any amounts, sums, fees or otherwise were made.  *See* Defs.' Mot, Ex. C and F. Plaintiffs provide no proof or even address this argument in their opposition.

Thus, Plaintiff's claim for improper deductions is dismissed.

#### 2.  Withholding Gratuities

The Parties dispute about whether Defendants paid gratuities to Plaintiffs.

Defendants argue that the subcontract agreement template clearly states that "[Defendants] do not Receive Gratuity".  *See* Defs' Mot., Ex. D.  Defendants further argue that Plaintiffs operated shuttles, busses and vans, not taxis and were not given a customary tip, as is the case with waiters in the hotel industry.  *See* Defs' Mot., Ex. E.  If cash was given to the driver, the driver kept it.  There were no "credit card" tips included when a client would book the service, which often was through another transportation company subcontracting the work to CC.  Tips were not a part of the charges to the client.  *See* Defs' Mot., Ex. D.

Plaintiffs allege that, although drivers were permitted to retain tips given to them in cash (Pls. 56.1 ¶ 19), tips or gratuities paid on a credit card were never given to the drivers.  *See* Pl.'s Opp., Ex. 4 (Williams Decl.), Ex. 5 (Criaza Decl.), Ex. 6 (Mathura Decl.), Ex. 7 (Rodriguez Decl.) ¶ 29.  Plaintiff conclusively alleges that such gratuities were paid on credit card, and these monies were retained by the other businesses contracting with Defendant.  However, Plaintiffs provide no proof except speculative, self-serving affidavits to demonstrate that gratuities were withheld without substantiating any further.  The record is devoid of any actual evidence that such credit card tips were ever paid or that Defendants retained such monies instead of providing it to Plaintiffs.  Plaintiffs' assumptions, in the absence of any proof, are insufficient to create a genuine dispute of material fact on this issue and the claim for unlawful withholding of gratuities is therefore dismissed.

### 3. Failure to Pay Minimum Wages

Defendants submit pay checks and 1099s along with the drivers' trip sheets to show that Plaintiffs were paid substantially in excess of minimum hourly wages.  The compensation was generally paid on a "per trip basis/flat fee" as opposed to "hourly" wages.  If a driver completed the job faster, he was still paid for the minimum; if it took longer due to the client or traffic, he

would be additionally compensated.  *See* Decl. of Zoly Losch. Mr. Losch testified for example

that a van shuttle to the airport would be paid as $45 with a minimum of 3 hours, which for the

purposes claimed here can equate to $15 an hour – a wage not required in New York until 2019

as minimum wage; or $80 for a bus or mini-coach with a four-hour minimum – still in excess of

New York minimum wage over 6 years later.

Plaintiff provides no proof or even address this argument in his opposition.  As such,

Defendants have met their burden to show that they paid minimum wages and Plaintiff has not

rebutted.

Thus, Plaintiff's claim for failure to pay minimum wages is dismissed.

### D.  Plaintiffs were Employees of TSU

The FLSA defines an "employee" as "any individual employed by an employer," 29

U.S.C. § 203(e)(1), and, most unhelpfully, defines an "employer" circularly as "any person

acting directly or indirectly in the interest of an employer in relation to an employee," *Id.* §

(203)(d); *see Landaeta v. N.Y. & Presbyterian Hosp., Inc*., No. 12–CV–4462 (JMF), 2014 WL

836991, at 3 (S.D.N.Y. Mar. 4, 2014). In assessing whether an individual is an employee under

the FLSA, courts in this Circuit consider the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers'
> opportunity for profit or loss and their investment in the business, (3) the degree of skill
> and independent initiative required to perform the work, (4) the permanence or duration
> of the working relationship, and (5) the extent to which the work is an integral part of the
> employer's business.

*Brock v. Superior Care, Inc*., 840 F.2d 1054, 1058–59 (2d Cir.1988); *see also Hart v. Rick's

Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 912 (S.D.N.Y.2013).  The overriding consideration under

the FLSA is the "economic reality" of the relationship—that is, whether "the workers depend

upon someone else's business for the opportunity to render service or are in business for themselves." *Brock*, 840 F.2d at 1059.

The NYLL defines an "employee" as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service" *Id*. § 190(3).  In determining whether a worker is an employee or independent contractor under the NYLL, courts consider factors similar to those used in the FLSA inquiry, although with a slightly different emphasis.  Specifically, courts consider the factors outlined in *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, (2003): "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  *Id*. at 198, 770 N.Y.S.2d 692; *see also Browning v. Ceva Freight, LLC*, 885 F.Supp.2d 590, 598 (E.D.N.Y.2012).  Unlike the FLSA, which focuses on the economic reality of the relationship, "the critical inquiry in determining whether an employment relationship exists [under the New York Labor Law] pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog*, 1 N.Y.3d at 198, 770 N.Y.S.2d 692, 802 N.E.2d 1090.  Nevertheless, many courts have commented upon the similarity of the two tests, and some courts have even analyzed the two together.  See, e.g., *Sellers v. Royal Bank of Canada*, 12 Civ. 1577(KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014); Browning, 885 F.Supp.2d at 599; *Velu v. Velocity Express, Inc*., 666 F.Supp.2d 300, 306–07 (E.D.N.Y.2009).

While "[t]he existence and degree of each factor is a question of fact ... the legal conclusion to be drawn from those facts—whether workers are employees or independent

contractors—is a question of law." *Brock*, 840 F.2d at 1059.  The inquiry under both the FLSA and the NYLL is necessarily fact-intensive, leading courts in other cases involving private car drivers to reach different results depending on the particulars of the given case.

Defendants argue that Plaintiffs were all independent contractors.  According to Defendants, CC and TSU are separate entities with separate tax identification numbers that operate from different locations (TSU operated in New York, and CC operates in New Jersey). Defs.' Mot., Mem of Law at 3-4.   TSU subcontracted work to CC, but it did not "do business as" CC.  CC was closed in 2019.  *Id*.  Defendants argue that Plaintiffs were independent contractors and not employees because Plaintiffs signed independent contractor agreements with Defendant CC.  Defs.' Mot., Mem of Law at 3-4.  In support, Defendants produce unsigned template of such subcontract agreements.  *See* Defs.' Opp., Ex. D ("Important Information Driver's/ Subcontractor Agreement").

As to degree of control, this factor weighs strongly in favor of a finding that Plaintiffs were employees of TSU.  Particularly relevant to the control factor is whether a worker is "free to set his own schedule and take vacations when he wished."  *Saleem v. Corporate Transp. Group, Ltd*., 52 F.Supp.3d 526 (S.D.N.Y. 2014).  Plaintiff Williams avers that "[t]hroughout [his] employment with TSU, [he] regularly worked four to six days and often 55 to 60 hours a week.  *See* Pl.'s Opp., William Aff ¶ 17, Ex. 4.  Generally, [he] started [his] day at TSU's facility at 8:00 am and return the vehicle at about 10:00 pm."  *Id*.  Plaintiffs further allege that Defendant's job was take-it or leave-it, as Defendants set all of the payment terms.  *See* Defs.' Mot., Zoly Dep, Ex. H at 137-38.  Moreover, drivers did not originate their own business or choose their passengers.  And they state that they were offered less work if they rejected a job.

*See* Pl.'s Opp., William Aff ¶ 25, Ex. 4.  Thus, the degree of control exercised by Defendants over Plaintiff creates a strong inference of an employer-employee relationship.

As to plaintiffs' opportunity for profit or loss and their investment in the business, Defendants argue that Plaintiff dictated his own schedule and they worked elsewhere in addition to driving for Defendants.  *See* Pl.'s Opp., William Aff ¶ 22, Ex. 4.  Plaintiffs allege that due to the demanding work schedule, they did not have the opportunity to get any additional employment outside of their employment with Defendants.  *Id.*  Thus, this factor weighs in favor of Plaintiffs being employees of TSU.

As to the degree of skill and independent initiative required to perform the work, while the Defendants allege that all drivers were required to maintain a special license, Plaintiff testified that he was never required to have a special license and the record contains no definitive proof that such a license was a requirement for the job or that Plaintiff himself actually obtained one.  *See* Pl.'s Opp., William Aff ¶ 4, Ex. 4**.**  As such, there were barely any additional skills required to drive for Defendants as the drivers were required to simply drive passengers to and from the airport.  Thus, this factor does not provide a significant indication of the type of working arrangement that existed between the parties.

As to Plaintiff's work as an integral part of Defendants' business, this factor provides little assistance in determining the employment relationship.  While Plaintiff argues that because Defendants were in a transportation business, the operation of vehicles was the most integral part of Defendants' business, it is equally important that Plaintiff was not an indispensable driver, since there were other drivers like him.  *See Browning*, 885 F.Supp.2d at 610 (observing that although drivers played an integral part in defendants' business, they were easily replaceable, and

13

therefore "this factor only weigh[ed] slightly in favor of finding that the" drivers were employees under the FLSA).

As to whether Plaintiff worked exclusively for defendant, here, too, the parties dispute whether Plaintiff worked exclusively for Defendant.  Defendants speculate that Plaintiff worked several jobs while being employed by Defendants, however, they submit no evidence dispositively proving this fact and the Plaintiff expressly testified that he did not do so.  *See* Defs.' Opp. at 4*;* Pl.'s Opp., William Aff ¶ 22, Ex. 4.  In the absence of proof to the contrary, Plaintiff's testimony that he worked exclusively for Defendant weighs in favor of the existence of an employer-employee relationship.

Balancing the relevant factors, I find that Plaintiff was an employee, and not an independent contractor of Defendants for FLSA and NYLL purposes.

## IV.     CONCLUSION

For the foregoing reasons, this Court grants, in part, and denies, in part, Defendants' Motion for Summary Judgment.


**SO ORDERED.**



_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
          September 30, 2022

14